## Physically Handicapped Drivers

ELMER T. BOLLA, Deputy Attorney General, and ANNE X. ALPERN, Attorney General, June 4, 1959.— You have requested our advice concerning the proper interpretation of Section 604 of The Vehicle Code of May 1, 1929, P. L. 905, as amended,* 75 PS §164, and asked the following questions:

---

* Now Act of April 27, 1959, P. L. 58.

"1. Is a person having the following disabilities included under the provisions of section 604(b); one arm totally incapacitated, the other arm very limited partial use for other activities but cannot use it to operate a motor vehicle.

"2. Is a person who has lost the use of both hands prohibited by law from operating a motor vehicle or is it within the discretion of the Secretary of Revenue to grant him an operator's license?"

Subsection (b) of section 604 of The Vehicle Code, supra, 75 PS §164(b), provides:

"(b) Physical disability includes the loss of the use of both hands."

You have stated that an individual, as a result of polio, has suffered the loss of the use of both hands to the extent that he could not operate an automobile unless it were equipped with automatic foot controls.

The foot-controlled automobile operates as follows:

"The foot-driving controls can function with absolutely no use of the arms or hands. Steering is accomplished by means of a 'wheel' near the floor direct-coupled to the regular steering shaft. The left foot, fitted into a steel slipper, turns this steering disc much the same as a normal person would use a wheel spinner-knob on the regular wheel. A device on the heel of the steel slipper helps hold the wheel rigid at high speeds, both straight ahead and on moderate turns. The right foot operates the gear selector, throttle, and brake. Controls for the horn, turning indicators, dimmer switch, and other accessories are adapted as necessary. Most drivers adjust easily to this method of driving. An automatic transmission and power steering are necessary, of course.

"Adjustments can be made to compensate for weak leg muscles, but to drive with the feet, a person should have normal reactions and command of the muscles needed, as well as the mental stability to meet the

requirements of present-day driving. It is very desirable for the driver using foot-steering controls to have 90% of the normal use of the leg muscles, with the ability to raise one leg at a time, and to have good strength in the muscles of the lower back and sides, for stability when turning." (Taken from a description sheet entitled "Automobile Foot-Driving Controls", Kope, Inc., Engineering and Manufacturing, 14660 E. Manning, Parlier, California, lodged in Revenue's file).

The limitation of subsection (b) of section 604 of The Vehicle Code, supra, describes physical disability as including the loss of the use of both hands, not just the loss of both hands by amputation.

In the instant case, it is obvious that the individual's arms and hands are so affected as to substantially and materially impair the use thereof in the practical performance of the functions of a stock model motor vehicle operator.

There is not much use of a hand without the cooperating function of the use of an arm. The mere fact that a person must have an automobile equipped with foot controls, which dispenses with the use of the hands on the steering wheel, indicates that there is a loss of the use of both hands necessarily required to operate a stock model motor vehicle.

There is no provision in The Vehicle Code, supra, permitting the issuance of a license to such an individual because of the fact that the car is equipped with foot controls.

In the 1957 session of the legislature, Senate Bill No. 639 was introduced to amend The Vehicle Code, supra, by deleting the prohibition against issuing an operator's license or learner's permit to a person who has lost the use of both hands. This bill was defeated in the Senate.

In considering your second inquiry, your attention is brought to subsection (*a*) 7 of section 604 of The Vehicle Code, supra, 75 PS §164, wherein it is provided that a person shall not be licensed when:

"(a) An operator's license or learner's permit shall not be issued to any person under the following conditions: . . .

"7. When afflicted with, or suffering from, a physical . . . disability . . . which, in the opinion of the secretary, will prevent such person from exercising reasonable and ordinary control over a motor vehicle . . . ."

We are of the opinion, and you are accordingly advised that a person having one arm totally incapacitated and the other arm having a very limited partial use for other activities but who cannot use it to operate a motor vehicle comes within the provisions of subsection (*b*) of section 604, supra.

Once a determination has been made that a person comes within the provisions of subsection (*b*) of section 604, supra, then the Secretary of Revenue has no discretion to grant such a person an operator's license under the provisions of subsection (*a*) 7 of section 604 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §164.

A survey of the 50 States and the District of Columbia reveals that all but Pennsylvania grant discretion to their licensing authority to grant restricted licenses to individuals who have lost the use of both of their hands but can competently operate a foot controlled vehicle like that described above. Of these, however, only California (1), Georgia (several), Massachusetts (2), Michigan (1), and New Hampshire (1), have actually issued such licenses to applicants, and New York, North Carolina, Oklahoma, Wisconsin, and Vermont indicate that it is unlikely that such an applicant would be licensed.